IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CARMEN M. CAIN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 10-3422-CV-S-ODS |

**ORDER AND OPINION REVERSING AND REMANDING COMMISSIONER'S FINAL DECISION**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her disability applications. The Commissioner's decision is reversed and remanded.

I. INTRODUCTION

Plaintiff is a 27-year-old woman. She was found by the ALJ to have the following severe impairments: cognitive disorder not otherwise specified; borderline intellectual functioning, math and reading disorders; amnestic disorder; depression; and anxiety.

Plaintiff claims she became disabled in 2005. During a psychological evaluation on December 6, 2006, with Robert H. Hoffman, PhD, Plaintiff reported that in 2003 or 2004 she suffered cardiac arrest during surgery and did not breathe for a couple minutes. At this time, she reportedly became amnestic of many prior events. Several tests later revealed cognitive impairment in Plaintiff's memory and "significant deficits" in regard to select executive functions such as planning, problem solving, abstract reasoning, and organizational skills. Plaintiff also scored low on IQ and achievement tests (full scale IQ scores of 73 and 78), although Plaintiff learning difficulties before her reported amnesia.

In 2007, Plaintiff was diagnosed with postpartum thyroiditis and was prescribed Synthroid. Shortly after her Synthroid was increased, Plaintiff reported to Kurt A. Habben, MD, that she was experiencing increased paranoia and anxiety. He prescribed Paxil.

Between September 2007 and into 2009, Plaintiff experienced some temporary improvement in anxiety – she would report at times her medication was working – but at several other points she continued to report severe anxiety. Observations by her providers corroborated these reports. In 2009, Plaintiff's psychiatrist, Tamara J. Dolenc, MD, completed a "Mental Functional Capacity" form in which she opined Plaintiff had many marked and extreme mental limitations. A vocational expert (VE) would later identify three unskilled jobs requiring minimal social contact and testify that Dr. Dolenc's limitations would prevent a worker even from performing these jobs.

The ALJ did not give controlling weight to Dr. Dolenc's opinion and found that Plaintiff retained the capacity to perform work existing in significant numbers in the national economy. This action for judicial review followed.

## II. DISCUSSION

"The Social Security Act provides for judicial review of final decisions of the Commissioner, which is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision, and whether the Commissioner correctly applied the relevant legal standards." *Mason v. Barnhart*, 406 F.3d 962, 964 (8th Cir. 2005) (citations omitted). Substantial evidence is defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Martise v. Astrue*, 641 F.3d 909, 920-21 (8th Cir. 2011) (citation omitted). "The court must . . . take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Id.* at 921 (citation omitted).

Plaintiff argues the ALJ erred in not giving controlling weight to Dr. Dolenc's opinion that Plaintiff suffered from many mental limitations. To be entitled to controlling weight, a medical opinion must be (1) "well-supported by medically acceptable clinical

and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Apparently referring to Dr. Dolenc,[1] the ALJ wrote that he was giving some, but not controlling, weight to her opinion in part because it was "not supported by clinical findings." In making this statement, the ALJ appears to have been addressing the first requirement for controlling weight – that the medical opinion be "well-supported by medically acceptable clinical and laboratory diagnostic techniques."

Many opinions expressed by Dr. Dolenc *are* supported by clinical findings. For example, Dr. Dolenc opined Plaintiff was extremely limited in her ability to respond appropriately to changes in a work setting. This is supported by Gregory J. Murrey, PhD, who in May 2007 administered clinical tests during a psychological evaluation. Based on these tests, Dr. Murrey found that Plaintiff exhibited "significant deficits" in executive functions such as planning, problem solving, abstract reasoning, and organizational skills. Dr. Dolenc also opined Plaintiff was moderately limited in her abilities to understand, remember, and carry out simple instructions. Clinical tests performed by Dr. Murrey and Dr. Hoffman, PhD, particularly the Wechsler Memory Scale – III, both provide strong support for this opinion.

Dr. Dolenc also opined Plaintiff was marked and extremely limited in her abilities to interact socially in the workplace. Numerous clinical findings support this opinion. Lynne E. Lamar, MA, LP, who treated Plaintiff with relaxation therapy, administered the Beck Anxiety Inventory, and Plaintiff scored within the severe range. And, about 1 month after Dr. Dolenc rendered her opinion, a psychological evaluation of Plaintiff was performed by Rhonda P. Krossner, PhD, at the request of Dr. Dolenc. Dr. Krossner administered three tests: the Beck Depression Inventory-II (BDI-II); the Adult Manifest Anxiety Scale (AMAS-A); and the Millon Clinical Multiaxial Inventory-III (MCMI-III). Although Plaintiff's BDI-II responses suggested her depression was in partial remission,

---

[1] The ALJ referred generally to "the opinion[ ] of [Plaintiff's] treating . . . psychologist." The Commissioner does not identify any other psychologist the ALJ would have been referring to other than Dr. Dolenc.

3

Plaintiff's profile on the AMAS-A suggested to Dr. Krossner that "objectively, [Plaintiff] may not be experiencing marked psychosocial stressors but that she worries extensively about problems that she does have in a maladaptive away." And Plaintiff's profile on the MCMI-III suggested "anxiety symptoms and personality traits that emphasize avoidant, compulsive, and some degree of paranoid features." Dr. Krossner considered the MCMI-III findings to be "consistent" with her interview impression of Plaintiff "as having a high degree of anxiety that is influenced to some degree by paranoid ideation."

Because the ALJ failed to acknowledge the wealth of clinical findings that supported Dr. Dolenc's opinion, he never examined whether these findings were the result of "medically acceptable clinical and laboratory diagnostic techniques" or whether Dr. Dolenc's opinion was "well-supported" by them. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ's failure to evaluate the clinical findings that supported Dr. Dolenc's opinion could be considered harmless if Dr. Dolenc's opinion was "inconsistent with the other substantial evidence in [the claimant's] case record," because, if it was inconsistent in this manner, controlling weight was not required to be given. *See* §§ 404.1527(d)(2), 416.927(d)(2).

Another reason the ALJ gave for not assigning controlling weight to Dr. Dolenc's opinion was that it was "not supported by clinical . . . observations during routine office visits." But at Dr. Dolenc's first appointment with Plaintiff, Plaintiff appeared "very" anxious and "intermittently on the verge of crying." Plaintiff also "complained of sweaty palms and was playing with a Kleenex tissue that she was tearing into pieces" during the appointment. Dr. Dolenc's mental status examination revealed Plaintiff's "attention and concentration, short and long-term memory, fund of knowledge, and abstract reasoning were all impaired." At her next appointment, Plaintiff appeared "somewhat" anxious and exhibited "bilateral hand tremors that worsened during the interview." And at her third appointment, Dr. Dolenc noted Plaintiff "continues to have prominent agoraphobia and is easily anxious." In addition, Dr. Krossner observed that Plaintiff presented herself as having an "anxious mood and correlating affect." Two of Plaintiff's providers (Melanie J. Johnson, MD and Ms. Lamar) noted Plaintiff did not want

4

examining-room doors closed during appointments, and they observed other anxious behavior.

The Commissioner does not dispute that these observations support Dr. Dolenc's opinion but argues they "do not reflect the type of debilitating symptoms referenced" by Dr. Dolenc. But while Dr. Dolenc's opinion may not be *fully supported* by her observations, it is not *inconsistent* with them. *See* SSR 96-2P, at *3 (noting opinion need not have direct support of all evidence "as long as there is no other substantial evidence in the case record that *contradicts* or *conflicts* with the opinion" (emphasis added)). And more importantly, Dr. Dolenc's treatment notes consist of more than just her observations; they also include Plaintiff's reports to Dr. Dolenc that she was "very apprehensive" around others, would become "easily overwhelmed" in crowded places, and would have panic attacks at least once a day. Even after her improvement with medication, Dr. Dolenc noted Plaintiff "continues to feel anxious in social circumstances and tends to worry." Dr. Dolenc also noted Plaintiff "continues to need a lot of assistance from her mother with daily activities" and "continues to have problems with concentration and memory." These treatment notes are more than just "not inconsistent" with Dr. Dolenc's opinion, they support it.

The ALJ also found that Plaintiff's medications and therapies were effective in "stabilizing" her anxiety symptoms. This finding is not supported by substantial evidence in the record as a whole. The Commissioner cites to several instances during Plaintiff's treatment where she would report improvement in her anxiety symptoms and contends an impairment is not disabling if it is "'controlled by treatment or medication.'" But while the evidence shows Plaintiff's anxiety symptoms improved – even Plaintiff admitted at the hearing that her medications were somewhat helpful – Dr. Dolenc still observed and recorded Plaintiff's anxious behavior over a year after Plaintiff began taking anxiety medication and months after Plaintiff began relaxation therapy. Testing in 2009 still showed a "high degree of anxiety," and Plaintiff still described severe symptoms during the hearing. The evidence does not show her anxiety ever "stabilized" or was "'controlled'" for any period that would justify the ALJ's finding.

Plaintiff also attacks the ALJ's finding that she was able to provide for her baby's

5

needs on a daily basis and that her "independence and range of daily activities" supported his assessment of her residual functional capacity. The ALJ's findings are supported by a function report Plaintiff completed when she initially applied for benefits, which indicated she could perform a significant range of daily activities without assistance, including going to the mall on a regular basis. But this report does not constitute substantial evidence inconsistent with Dr. Dolenc's opinion because Plaintiff's severe anxiety symptoms did not arise until August 29, 2007, *months after she completed the function report*. The medical records document Plaintiff's anxiety, and at the hearing she testified she "can't handle" too many people or too much traffic and that it makes her feel like she is "in hell"; she feels shaky and ends up crying. If she is driving when this occurs, she pulls over, which she said happens once or twice a week. She goes to the grocery store either early in the morning or late at night to avoid these situations. Plaintiff also testified she feels shaky and like she wants to "get out of the situation" once or twice each day. This testimony comports with Plaintiff's statements to her mental health providers. For this reason, the function report does not justify denying Dr. Dolenc's opinion controlling weight.

The ALJ also noted Plaintiff was articulate at the hearing, was able to respond to questions, and did not appear anxious or uncomfortable during the 25-minute hearing.[2] And the Commissioner notes Dr. Dolenc only examined Plaintiff three times before rendering her opinion and that her opinion took the form of a checklist summary. But again, if this evidence merely *fails to support* Dr. Dolenc's opinion, it does not *contradict* or *conflict with* that opinion, which it must for it to justify failing to give the opinion controlling weight. *See* SSR 96-2P, at *3.

The Court concludes substantial evidence in the record as a whole does not

---

[2] An ALJ's observation of a claimant during a hearing "is completely proper in making credibility determinations" *Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001), but an ALJ cannot use his or her observations to substitute his or her judgment for a physician's, *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990). Contrary to Plaintiff's argument, the ALJ's opinion does not indicate that he substituted his judgment for Dr. Dolenc's based on his observations at the hearing.

support the ALJ's conclusion that Dr. Dolenc's opinion is not entitled to controlling weight. The case will be reversed. The record supports a disability onset date of August 29, 2007, when Plaintiff's anxiety and paranoia were first documented by her provider and she was prescribed medication.

## III. CONCLUSION

The Commissioner's decision is reversed and remanded for the calculation of benefits using a disability onset date of August 29, 2007.
IT IS SO ORDERED.

DATE: November 8, 2011

/s/  Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT